IN THE COURT OF CRIMINAL APPEALS
AT KNOXVILLE
Assigned on Briefs April 21, 2026

**STATE OF TENNESSEE v. JUSTIN JAMES CRUGER WENDRICKS**

**Appeal from the Judgment of the Circuit Court for Sevier County**
**Nos. 24-CR-152 & 2024-CR-266-III         Jeff D. Rader, Judge**

_____

**No. E2025-00388-CCA-R3-CD**
_____

In April of 2024, the Defendant, Justin James Cruger Wendricks, pleaded guilty to two counts of evading arrest in a motor vehicle, two counts of aggravated assault, one count of resisting arrest, and one count of driving on a suspended license, stipulating to the facts contained in the warrant. The Defendant agreed to a sentence of eight years, suspended to supervised probation after the service of twelve months of incarceration. In September of 2024, the trial court filed a probation violation warrant alleging that the Defendant had absconded. After a hearing, the trial court revoked the Defendant's probation and ordered him to serve the balance of his sentence in incarceration. On appeal, the Defendant contends that the trial court erred when it ordered him to serve his sentence in confinement. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER and JILL BARTEE AYERS, JJ., joined.

William W. Gill, Franklin, Tennessee, Assistant Public Defender – Appellate Division (on appeal), Sydney D. Pack, Sevierville, Tennessee, (at guilty plea hearing), for the Appellant, Justin James Cruger Wendricks.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Jimmy Dunn, District Attorney General; and Charles L. Murphy, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's fleeing from police while in a motor vehicle on two separate occasions. For his role in these events, a Sevier County grand jury indicted

him in case 24-CR-152 for two counts of evading arrest, one of those being in a motor vehicle, two counts of aggravated assault, two counts of reckless endangerment, one count of reckless driving, one count of stop sign violation, one count of failure to yield, three counts of leaving the scene of an accident, one count of resisting arrest, one count of driving on a suspended license, one count of driving with expired registration, and one count of violation of the financial responsibility law. The affidavit of complaint issued by the arresting officer stated the following:

> On [October 25, 2023] around 12:22 hours, I observed a vehicle on Porterfield Gap Road matching the description of a vehicle that had previously fled from Sevierville Police Department. I turned to attempt to initiate a traffic stop but the vehicle increased speed. I then observed the vehicle crashed out on Boyds Creek Highway at Porterfield Gap Road. It was determined the driver had failed to stop at a stop sign and failed to yield the right of way. The vehicle had struck an SUV occupied by a driver (W/M 70 y/o) and a passenger (W/F 64 y/o), both of which were injured in the crash. I then witnessed the driver/defendant flee the scene. I pursued the defendant . . . on foot. The defendant refused to comply with commands and was later tased. The defendant continued to resist on the ground but was eventually taken into custody. A status check on the defendant[']s license showed it to be suspended as of 3-25-2023. This did occur in Sevier County.

The grand jury then indicted Defendant in case 24-CR-266 for one count each of: evading arrest in a motor vehicle, driving on a suspended license, driving with expired registration, speeding, and failure to maintain his lane. The affidavit of complaint by the arresting officer stated the following:

> On 10-25-2023, I . . . attempted a traffic stop on a spray painted dodge sedan for dark tinted windows, upon initiating my blue lights and sirens, the vehicle fled taking evasive maneuvers to get away from me, the vehicle was driving over the center lines on the roadway, speeds exceeded 100 mph in a 55 mph zone and I terminated the chase. SCSO and THP located the vehicle and another brief pursuit ensued before the vehicle crashed out and caught fire. The driver, [the Defendant] was placed under arrest. He was found to be suspended for Non ACD Withdrawal on 3/23/23 out of Pigeon Forge, the tag on the vehicle was also expired. [The Defendant] had local warrants out of Sevier Co.

In April 2024, the Defendant pleaded guilty to: two counts of evading arrest, a Class D felony; one count of aggravated assault, a Class D felony; two counts of reckless

aggravated assault, a Class D felony; one count of resisting arrest, a Class B misdemeanor; and one count of driving on a suspended license, a Class B misdemeanor. The Defendant agreed to an eight-year sentence, as a Range I offender, but agreed to 100% service of his sentence. The parties agreed that the Defendant would serve twelve months and then serve the remainder of his sentence on probation. He agreed to the loss of his driver's license for one year and to undergo an alcohol/drug assessment. The judgments were entered April 22, 2024.

On September 30, 2024, the Defendant's probation officer filed a probation violation report alleging that the Defendant had absconded from supervision. He notified the court that the Defendant had violated the following provisions:

5. I will inform my Probation Officer before changing my residence or employment. I will get the permission of my Probation Officer before leaving the county of my residence or the State.

6. I will allow my Probation Officer to visit my home, employment site, or elsewhere, will carry out all instructions he or she gives; will report to my Probation Officer as instructed; will comply with the Administrative Case Review committee, if the use of that process is approved by the Court; will comply with a referral to the Resource Center programs, if available, by attending; and will submit to electronic monitoring and community service if required.

. . . .

9. I agree to pay all required fees to the Supervision and Criminal Injuries fund unless waived by appropriate authorities. Additionally, if so ordered by the Court, I will pay all imposed fines and court costs.

10. I will observe any special conditions imposed by the court as listed below: Alcohol and Drug Assessment and follow recommendations, 1 year loss of License. Restitution of $2000 at $50 per month.

About probation rule number 5, the probation violation report indicated that on or about September 30, 2024, Officer Bradford and Officer Mashburn attempted a home check at 3380 Boogertown Road. No one was at the residence. The Defendant failed to inform his probation officer of his residence and his whereabouts are unknown.

3

About probation rule number 6, the probation officer alleged that the Defendant was instructed to report to probation immediately upon release. He was released on July 26, 2024, and had failed to report as instructed. Further, he had failed to allow probation officers to visit his home by not providing a valid home address.

About probation rule number 9, the officer alleged that the Defendant had made no court costs or restitution payments. The balance was $4935.

About probation rule number 10, the probation officer alleged that the Defendant had failed to comply with his court-ordered special condition of completing an alcohol and drug assessment.

Pursuant to the history of supervision, the Defendant pleaded guilty on April 22, 2024. On July 26, 2024, he was released from the Sevier County jail. On September 10, 2024, the NCIC databank showed that the Defendant had an "Absconder/Non-Compliant Sexual Offender warrant" in Illinois. On September 12, 2024, Officer Hinson called the Defendant's last known phone number. A male answered and advised that he did not know the Defendant. A letter was sent to the Defendant's last known address, and the letter instructed the Defendant to call the probation office. On September 26, 2024, the Defendant failed to report, and on September 30, 2024, officers attempted a home visit at his last known address. No one was at the residence, and the Defendant's whereabouts were unknown.

The trial court issued an arrest warrant. The Defendant was arrested, and the trial court held a hearing on the probation violation wherein the Defendant offered a plea of guilty to the violation. The State articulated the underlying facts as:

[The Defendant] originally pled to two counts of evading arrest.

He had been involved in two police chases originally on this case, Your Honor. He got away from one officer. Then, in a second police chase, he was apprehended after he wrecked the vehicle involving two occupants. Those two individuals are here today . . . . They had injuries, were treated and released. The vehicle was totaled, it's my understanding. She had a special . . . van that had wheelchair accessible and those type of [amenities]. It was especially designed for her and her condition, Your Honor.

He pled guilty to an eight-year sentence and served twelve months. I don't know if the State knew this at the time, but he also . . . went to Knox County . . . [and] got a sentence on an attempted burglary charge.

So he's on probation in two counties, Your Honor. Probation has never seen him.

The State then posited that the Defendant was a flight risk, as evidenced by his felony evading arrest convictions. It further stated that, based on the fact that the Defendant never even reported, the trial court should order that the Defendant serve his sentence in confinement.

The Defendant's attorney informed the court that the Defendant was not contesting his probation violation, other than his Alcohol and Drug Assessment, which was in fact completed before his release. The assessment resulted in no recommendations. As to the other allegations, the Defendant agreed that he had violated his probation.

Counsel explained that when the Defendant got out of jail, he went to Knox County. Counsel said that he did not have a license, was homeless with no phone, and was having difficulty getting on his feet. She said he now had employment opportunities, and his grandfather was present to testify on his behalf.

Before hearing testimony, the State noted that the Defendant was wanted in Illinois, solidifying his status as a flight risk. The State noted that the issue in Illinois was a "registry issue, which mean[t] [he] left that state without permission, which would be evidence of flight."

The Defendant testified that he pleaded guilty to the aforementioned offenses and received an eight-year sentence. When he was released from jail in July he was supposed to live with a friend, but the two got into a disagreement. He, therefore, ended up homeless. He went to Knoxville and tried to contact probation but called the wrong number by accident. His cell phone was then stolen from him.

The Defendant said he sought employment but no longer had a vehicle or a license. He said he was denied employment because of his previous aggravated assault conviction. He found someone who was willing to employ him, but he was arrested before completing the final interview. He said he was arrested while trying to work for a friend to get money to get transportation to seek more employment. The Defendant submitted a letter from his friend who said that he would hire him upon his release. The Defendant testified that he reached out to his grandfather, who had said he would be happy to help provide the Defendant transportation.

The Defendant said that he had only resided in Tennessee since moving here. He had a six-year-old daughter in Illinois. Her mother had an inoperable brain tumor, so the

Defendant planned to have their daughter moved to Tennessee. The Defendant assured the court that, if he were returned to probation, he would comply with all the rules of probation.

During cross-examination, the Defendant testified that he lost the probation paperwork when he was transferred to and from Knoxville to address his charges in Knox County. He agreed that he had a violation of probation in Knox County, but he was unsure of the basis of that violation.

The Defendant said he had been convicted in Illinois for aggravated burglary, identity theft, and failure to register. He moved to Tennessee and received charges here. He agreed he failed to contact probation when he was released from jail. The Defendant said that he called "County" probation and not "State" probation and that he left multiple messages in an attempt to report for probation.

During redirect examination, the Defendant testified that he had not received new charges while he was absconding from probation.

The Defendant's grandfather testified and said that he was the president of a local technology company. He had been married to the Defendant's grandmother for forty-eight years. The Defendant's grandfather said that the Defendant first moved to Tennessee with his mother and the two stayed on their property. The Defendant worked at a Ford dealership successfully but then went to sell solar panels. Upon termination of that employment, he went back to Ford but did not stay employed there long. He described the Defendant as helpful.

The Defendant's grandfather knew when the Defendant had been released from jail but assumed that the Defendant was having success. He was unaware that the Defendant was homeless and struggling.

The Defendant's grandfather said he could not offer the Defendant a place to live but he could assist him with transportation.

After the hearing, the trial court found that the Defendant had violated his probation and addressed his sentence. It stated:

> I've done this for a long time, and one of the biggest concerns a Court has when you place someone on probation is whether or not they're going to comply or attempt to comply with probation. To the extent that you have someone who attempts to comply, it's usually pretty evident that they have some possibility that they will be able in the future to at least give you some basis or some baseline to determine that there's going to be improvement.

6

In this particular scenario, this [D]efendant, in this Court's opinion, got a pretty substantial break at the time he was sentenced. And following his jail time, it's clear to the Court in reviewing this case and looking at the circumstances and looking at what occurred at the time – and I've reviewed the files at what occurred – at the time that the plea agreement was struck, that the one important factor that the Court would be looking at throughout this [D]efendant's sentence is whether or not he is in fact reporting and being monitored by probation. After he's picked up for violating his probation, the proof in this record is that he really is in no better circumstance than he was at the time that he was originally sentenced. No progress has been made to speak of.

A lot of the testimony today I find to be somewhat incredible given the fact that he indicates he's attempted to obtain employment at twenty-eight different places. My experience has been that, at least in this area, most of the businesses are having a difficult time in getting somebody to work at all. Certainly there could be some truth in what he's saying, but there's not any exhibits that have been filed. There's not any proof in this record, other than his testimony, that he's tried to do anything beyond what was stated here on the witness stand.

I certainly understand his family's discussion with regard to their willingness to help[.] I'm sure they feel like they would do anything they could. But the one thing they can't do is make him act in an appropriate fashion.

It is particularly telling [to] me that this [D]efendant had the opportunity to at least contact probation, but did not do so. Simply to say, well, I was afraid – that's not something that's going to provide any justification to this Court for the [D]efendant's failure to report and to comply with the terms of probation.

I think I asked earlier, or it was discussed earlier, there was no indication that I can find that there's been any payment of restitution in any way or anything that's taken place to speak of, and I don't think there's any dispute as to that.

And so, it's particularly distressing to the Court when, really, this [D]efendant's in the same position he was in at the time he was sentenced. It does not appear to me that there is any real potential for additional

rehabilitation with regard to this [D]efendant, based on the circumstances that are communicated to the Court today and at the time he was taken into custody, especially given his unwillingness to at least attempt to contact probation and be in some sort of continuous contact with them. And if that were the case at that point, I think we probably would not be in this situation.

I understand the State's position. The State simply says we haven't done anything up to this point at all, there's no reason to believe that this is going to change. There's not much indication today based on the testimony before the Court, other than to say it's his first violation and to say that, you know, he probably can change and there are a lot of opportunities here because now he's going to ask for help. But in all fairness to the Court, I simply can't find that there's enough before the Court today which would indicate to me that I believe he's going to comply with the terms of probation.

I also am struck by the fact that the crimes that were committed, the fact that he continued to get in trouble after he'd been in trouble in Illinois, he's been in trouble in Knox County. He's in a situation now that the Court is having to go back and review what was done at the time of sentencing and what he was required to do, and the bare minimum that would require him to do just certain minimum contact is not even there.

So under those circumstances, the Court believes that this defendant certainly has not shown this Court that there is a less drastic alternative, that there is a better alternative than ordering him today to execute the balance of his sentence, and that is this Court's order.

The Defendant's attorney reminded the court that the Defendant's sentence was two consecutive four-year sentences. She asked the court if it would consider having him serve one of the four-year sentences and then returned to probation for the second four-year sentence. The trial court ruled:

Under the circumstances and in looking at this, if I'm correct, there was a substantial benefit given to this [D]efendant initially when this sentence was imposed. And so at this point, the Court orders that he be required to serve the balance of his sentence, the total sentence the Court looks at in determining this is an eight-year sentence, and that's this Court's order.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it ordered him to serve the balance of his sentence in confinement without placing sufficient findings in the record to justify that consequence. He argues that the trial court improperly focused on the Defendant's failure to contact the probation office, which was merely the factual basis for the violation and that it failed to consider multiple factors relevant to the ends of justice, the best interests of the public and the Defendant, and alternative less severe punishments. The State counters that the record supports the trial court's conclusion that confinement was the appropriate consequence of the Defendant's violation. We agree with the State.

Appellate courts review a trial court's revocation of probation decision for an abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequences on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). If a trial court fails to state its findings and reasoning for the revocation on the record, appellate courts may conduct a *de novo* review if the record is sufficiently developed, or the appellate court may remand the case for the trial court to make such findings. *Dagnan*, 641 S.W.3d at 759 (citing *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014)).

Probation revocation is a two-step consideration requiring trial courts to make two distinct determinations as to (1) whether to revoke probation and (2) what consequences will apply upon revocation. *Dagnan*, 641 S.W.3d at 757. The trial court's findings do not need to be "particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." *Id*. at 759 (citing *State v. Bise*, 380 S.W.3d 682, 705-06 (Tenn. 2012)).

"The trial judge may enter judgment upon the question of the charges as the trial judge may deem right and proper under the evidence adduced before the trial judge." T.C.A. § 40-35-311(d)(1). "If the trial judge finds by a preponderance of the evidence that the defendant has violated the conditions of probation and suspension of sentence, then the court may revoke the defendant's probation and suspension of sentence, in full or in part, pursuant to § 40-35-310." *Id*. When the trial court determines that a defendant's probation must be revoked, the court must then decide upon an appropriate consequence. *Dagnan*, 641 S.W.3d at 757. Among other things, the trial court can consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character. *Id*. at 759 n.5.

The probation statute provides for two categories of probation violations, technical and non-technical, with differing penalties for both. *State v. Walden*, No. M2022-00255-CCA-R3-CD, 2022 WL 17730431, at *3 (Tenn. Crim. App., Dec. 16, 2022). The following are classified as non-technical violations: a defendant's commission of a new felony or a new Class A misdemeanor, a zero-tolerance violation as defined by the department of correction community supervision matrix, absconding, or contacting the defendant's victim in violation of a condition of probation. T.C.A. § 40-35-311(e)(2). Once a trial court determines that a defendant has committed a non-technical violation of probation, the trial court may: (1) order confinement for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for the remainder of the unexpired term to a sentence of probation. See T.C.A. §§ 40-35-308(c); -310; -311(e)(2).

In the case under submission, the Defendant entered a plea of guilty to violating his probation, and the trial court was required only to determine the consequence for the violation. Absconding is a non-technical violation. The trial court was within its discretion to revoke the Defendant's probation and order him to serve the remainder of the unexpired term of his sentence.

The Defendant contends that the trial court erred because it did not place adequate findings on the record. We disagree. The trial court found that the Defendant got a substantial benefit when he pleaded guilty and received probation and that he never even reported for the first time. The court called into question the Defendant's truthfulness, speculating that it was unlikely that he had applied to twenty-eight places of employment. The court noted that the Defendant did not have a potential for rehabilitation. It also considered his criminal history, in that he had convictions in Illinois, failed to report there, then came to Tennessee, where he received convictions in two separate counties, and that he violated his probation in both counties. The trial court noted that the Defendant had made no progress toward bettering his life, had made no payment toward his restitution, and was essentially in the same place as he was when he was first sentenced. These findings are sufficient to support the trial court's ordering of confinement. The Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_S/ ROBERT W. WEDEMEYER_____
ROBERT W. WEDEMEYER, PRESIDING JUDGE

10